Scott E. Davis
State Bar No. 016160
SCOTT E. DAVIS, P.C.
8360 E. Raintree Drive, Suite 140
Scottsdale, AZ 85260

Telephone: (602) 482-4300
Facsimile: (602) 569-9720
email: davis@scottdavispc.com

*Attorney for Plaintiff Hope Hall*

# UNITED STATES DISTRICT COURT

# DISTRICT OF ARIZONA

| | |
|---|---|
| Hope Hall,<br><br>         Plaintiff,<br><br>    v.<br><br>Aetna Life Insurance Company; Progressive Casualty Insurance Company; Progressive Casualty Insurance Company Disability Plan,<br><br>         Defendants. | Case No.<br><br>**COMPLAINT** |

Now comes the Plaintiff Hope Hall (hereinafter referred to as "Plaintiff"), by and through her attorney, Scott E. Davis, and complaining against the Defendants, she states:

### *Jurisdiction*

1. Jurisdiction of the court is based upon the Employee Retirement Income Security Act of 1974 (ERISA); and in particular, 29 U.S.C. §§1132(e)(1) and 1132(f). Those provisions give the district courts jurisdiction to hear civil actions brought to recover employee benefits. In addition, this action may be brought before this Court pursuant to 28

U.S.C. §1331, which gives the Court jurisdiction over actions that arise under the laws of the United States.

*Parties*

2. Plaintiff is a resident of Maricopa County, Arizona.

3. Upon information and belief, Progressive Casualty Insurance Company (hereinafter referred to as the "Company") sponsored, administered and purchased a group long-term disability insurance policy which was fully insured by Aetna Life Insurance Company (hereinafter referred to as "Aetna"). The specific Aetna long term disability group insurance policy is known as Group Policy No.: GP-468594 (hereinafter referred to as the "Policy"). The Company's purpose in sponsoring, administering and purchasing the Policy was to provide long term disability insurance for its employees. Upon information and belief, the Aetna Policy may have been included in and part of an employee benefit plan, specifically named the Progressive Casualty Insurance Company Disability Plan (hereinafter referred to as the "Plan") which may have been created to provide the Company's employees with welfare benefits. At all times relevant hereto, the Plan constituted an "employee welfare benefit plan" as defined by 29 U.S.C. §1002(1).

4. Upon information and belief, Aetna functioned as the claim administrator of the Policy; however, pursuant to the relevant ERISA regulation, the Company and/or the Plan may not have made a proper delegation or properly vested fiduciary authority or power for claim administration in Aetna.

5. Aetna operated under a conflict of interest in evaluating her long-term disability claim due to the fact that it operated in dual roles as the decision maker with regard to whether Plaintiff was disabled as well as the payor of benefits. Aetna's conflict

1  existed in that if it found Plaintiff was disabled, it was then liable for the payment of her
2  disability benefits.

3     6.     The Company, Aetna and the Plan conduct business within Maricopa County
4  and all events giving rise to this Complaint occurred within Arizona.

### *Venue*

6     7.     Venue is proper in this district pursuant to 29 U.S.C. §1132(e)(2) and 28
7  U.S.C. §1391.

### *Nature of the Complaint*

9     8.     Incident to her employment, Plaintiff was a covered employee pursuant to
10 the Plan and the relevant Policy and a "participant" as defined by 29 U.S.C. §1002(7).
11 Plaintiff seeks disability income benefits in the form of "Own Occupation" benefits from
12 the Plan and the relevant Policy pursuant to §502(a)(1)(B) of ERISA, 29 U.S.C.
13 §1132(a)(1)(B), as well as any other non-disability employee benefits she may be entitled to
14 from the Plan and any other Company Plan, as a result of being found disabled in this
15 action.

16 Assuming the issue is ripe before the Court at the time of adjudication (i.e. the "Own
17 Occupation" timeframe in the Plan and Policy has expired and the relevant definition of
18 disability in the Policy is that Plaintiff must be disabled from "Any Occupation" to obtain
19 benefits), Plaintiff also seeks a determination that she is disabled and meets the "Any
20 Occupation" definition of disability set forth in the Plan and the relevant Policy as all the
21 evidence she submitted to Aetna and which is in the Administrative Record supports such a
22 determination by the Court.

23     9.     After working for the Company as a loyal employee, Plaintiff became
24 disabled on or about December 24, 2014, due to serious medical conditions and was unable

to work in her designated occupation as a Customer Service Supervisor. Plaintiff has remained disabled as that term is defined in the relevant Policy continuously since that date and has not been able to return to any occupation as a result of her serious medical conditions.

10. Following her disability, Plaintiff filed a claim for short-term disability benefits which was approved by the Company, and those benefits have been paid and exhausted.

11. Upon information and belief, the short-term disability Plan contained only an "Own Occupation" definition of disability. The fact that the short-term disability Plan contained a similar definition of disability as is set forth in the Aetna Policy and a different entity approved Plaintiff's short-term disability claim, is relevant evidence for this Court to consider with regard to the unreasonableness of Aetna's decision to deny her long-term disability claim. The approval of Plaintiff's short-term disability claim by another entity is evidence that Aetna's unreasonable and unlawful denial of her long-term disability claim was influenced by its conflict of interest and its desire to save money.

12. Following the exhaustion of her short-term disability benefits, Plaintiff then filed for long-term disability benefits under the relevant Policy which was administered by Aetna and it made decision in Plaintiff's long-term disability claim, which was to deny it.

13. Upon information and belief, the relevant Aetna Policy and definition of disability governing Plaintiff's long term disability claim is as follows:

> "Test of Disability:
>
> > From the date that you first became disabled and until monthly benefits are payable for 24 months you meet the test of disability on any day that:

> -You cannot perform the material duties of your own occupation solely because of an illness, injury or disabling pregnancy related condition; and
> -Your work earnings are 80% or less of your adjusted predisability earnings.
>
> After the first 24 months of your disability that monthly benefits are payable, you meet the plan's test of disability on any day you are unable to work at any reasonable occupation solely because of an illness, injury or disabling pregnancy-related condition."

14. In support of her claim for long-term disability benefits, Plaintiff submitted to Aetna medical evidence which supported her allegation that she met any definition of disability as defined in the relevant Policy.

15. In a letter dated April 10, 2015, Aetna informed Plaintiff it was denying her claim for long-term disability benefits.

16. Pursuant to 29 U.S.C. §1133, Plaintiff timely appealed Aetna's April 10, 2015 denial of her disability claim.

17. In support of her appeal and claim for long term disability benefits, Plaintiff submitted to Aetna additional medical, vocational and lay witness evidence demonstrating that she met any definition of disability set forth in the Policy.

18. Plaintiff submitted to Aetna a July 22, 2015 narrative letter authored by her board certified treating physician who opined, "I believe it is reasonable to assume that [Plaintiff] has been unable to work in any occupation since December 24, 2014 and this will continue indefinitely."

19. Plaintiff also submitted to Aetna a July 24, 2015 narrative letter authored by another treating physician who opined, "I believe that [Plaintiff] is not able to work in any full-time occupation, even at home, due primarily to her physical medical conditions."

-5-

20. Plaintiff also submitted to Aetna a Functional Capacity Evaluation report dated June 5, 2015, wherein after an extensive several hour evaluation, a qualified physical therapist determined, "…[Plaintiff] would not be able to function at a ***sedentary work category***." (original emphasis).

21. Further supporting her claim, Plaintiff submitted a vocational report from a certified vocational expert dated August 19, 2015, who after reviewing Plaintiff's medical evidence and the definition of disability and interviewing Plaintiff concluded, "From a vocational perspective, [Plaintiff] is unable to engage in any employment that may exist in the national economy and fully meets the criteria set forth in her disability policy."

22. Plaintiff also submitted a complete copy of her short term-disability claim file from the Company containing the information and medical evidence the Company relied on in approving her short term disability claim.

23. Plaintiff also submitted updated medical records from each of her treating providers and a list of her current medications, as well as the side effects they cause and the impact they would have on her ability to work in any work environment.

24. In addition to the medical records and reports submitted to Aetna, Plaintiff submitted two sworn affidavits from her husband and her mother, who both confirmed Plaintiff is unable to work in any occupation and that her medical condition has not improved in any way since her date of disability.

25. Plaintiff also submitted a sworn affidavit of her own explaining her medical conditions and the impact they have on her activities of daily living which also confirmed her inability to work in her previous occupation and in any occupation.

26. As part of its review of Plaintiff's claim for long term disability benefits, Aetna obtained medical records only "paper reviews" of Plaintiff's claim from two

physicians of its choosing; however, through the present date Aetna has never disclosed to Plaintiff the names of these doctors or the reviews/reports the authored.

27. Upon information and belief, Plaintiff alleges the reviewing physicians may be long time medical consultants for the disability insurance industry and/or Aetna. As a result, Plaintiff alleges the physicians may have an incentive to protect their own consulting relationships with the disability insurance industry and/or Aetna by providing medical records only paper reviews, which selectively review or ignore evidence such as occurred in Plaintiff's claim, in order to provide opinions and report(s) which are favorable to insurance companies and which supported the denial of Plaintiff's claim.

28. In letters dated September 18, 2015 and October 19, 2015, in order to engage Aetna in a dialogue so she could perfect any alleged deficiencies in her claim, Plaintiff requested a complete copy of any and all medical records only "paper reviews" from Aetna and the opportunity for her and her treating physicians to provide responses to the reviews prior to Aetna rendering a determination in her claim.

29. Prior to rendering its final denial in Plaintiff's claim, Aetna never shared with Plaintiff its medical records only "paper reviews" authored by the reviewing physicians so she could respond to the reports and/or perfect her claim. Aetna's failure to provide Plaintiff with the opportunity to respond to its reviewing physicians' reports is an ERISA procedural violation and precluded a full and fair review. Aetna's action in failing to disclose these reports also violates Ninth Circuit case law.

30. In a letter dated November 11, 2015, Aetna notified Plaintiff it had denied her claim for long-term disability benefits under the Policy and that she had exhausted her administrative levels of review and could file a civil action lawsuit in federal court pursuant to ERISA.

31.     Upon information and belief, Aetna's November 11, 2015 denial letter confirms it failed to provide a full and fair review, and in the process it committed numerous procedural violations pursuant to ERISA.

32.     In evaluating Plaintiff's claim, Aetna had an obligation pursuant to ERISA to administer it, "solely in her best interests and other participants" which it failed to do. [1]

33.     Aetna failed to adequately investigate Plaintiff's claim and failed to engage her in a dialogue during the appeal of her claim with regard to what evidence was necessary so she could perfect her appeal and claim.  Aetna's failure to investigate the claim and engage Plaintiff in a dialogue, or to ask her for or to obtain the evidence it believed was necessary to perfect the claim is a violation of ERISA and Ninth Circuit case law and a reason she did not receive a full and fair review.

34.     Plaintiff alleges Aetna provided an unlawful review which was neither full nor fair and that violated ERISA, specifically, 29 U.S.C. § 2560.503-1, by failing to adequately investigate her claim because its examining and reviewing medical professionals were not truly independent; by failing to credit Plaintiff's reliable evidence; by providing one sided reviews of Plaintiff's claim that failed to consider all the evidence submitted by her and/or de-emphasizing medical evidence which supported Plaintiff's claim; by disregarding Plaintiff's self-reported symptoms; by failing to consider all the diagnoses

---

[1] It sets forth a special standard of care upon a plan administrator, namely, that the administrator "discharge [its] duties" in respect to discretionary claims processing "solely in the interests of the participants and beneficiaries" of the plan, § 1104(a)(1); it simultaneously underscores the particular importance of accurate claims processing by insisting that administrators "provide a 'full and fair review' of claim denials," Firestone, 489 U.S., at 113, 109 S. Ct. 948, 103 L. Ed. 2d 80 (quoting § 1133(2)); and it supplements marketplace and regulatory controls with judicial review of individual claim denials, see § 1132(a)(1)(B). *Metro. Life Ins. Co. v. Glenn*, 128 S. Ct. 2343, 2350 (U.S. 2008).

1  and/or limitations set forth in her medical evidence as well as the impact the combination of
2  those diagnoses and impairments would have on her ability to work; by failing to engage
3  Plaintiff in a dialogue so she could respond to Aetna's doctors' reports by submitting the
4  necessary evidence to perfect her claim and failing to consider the impact the side effects
5  from Plaintiff's medications would have on her ability to engage in her won and in any
6  occupation.

7  35.   Plaintiff alleges the reason Aetna provided an unlawful review which was
8  neither full nor fair and that violated ERISA, specifically, 29 U.S.C. § 2560.503-1, is due to
9  its conflict of interest that manifested as a result of the dual roles Aetna undertook as the
10 decision maker and the payor of benefits.  Aetna's conflict of interest provided it with a
11 financial incentive to deny Plaintiff's claim, thereby saving itself money.

12 36.   Plaintiff is entitled to discovery regarding Aetna's aforementioned conflicts of
13 interest and any individual who reviewed her claim and the Court may properly weigh and
14 consider extrinsic evidence regarding the nature, extent and effect of *any* conflict of
15 interest and/or ERISA procedural violation which may have impacted or influenced
16 Aetna's decision to deny her claim.

17 37.   With regard to whether Plaintiff meets the both the "own" and "any"
18 occupation definitions of disability set forth in the Policy, the Court should review the
19 evidence *de novo*, because even if the Court concludes the policy confers discretion, the
20 unlawful violations of ERISA committed by Aetna as referenced herein are so flagrant they
21 justify *de novo* review.

22 38.   As a direct result of Aetna's decision to deny Plaintiff's disability claim, she
23 has been injured and suffered damages in the form of lost long-term disability benefits, in
24 addition to losing other potential non-disability employee benefits she may have been
25
26

1  entitled to receive through or from the Plan, from any other Company Plan and/or the
2  Company if Aetna had found that she was disabled and entitled to benefits. Plaintiff
3  believes other potential non-disability employee benefits may include but not be limited to,
4  health and other insurance related coverage or benefits, retirement benefits or a pension, life
5  insurance coverage and/or the waiver of any premiums due on a life insurance policy which
6  may provide coverage for her and her family/dependents.

7  39. Pursuant to 29 U.S.C. §1132, Plaintiff is entitled to recover unpaid benefits,
8  prejudgment interest, reasonable attorney's fees and costs from Defendants.

9  40. Plaintiff is entitled to prejudgment interest at the legal rate pursuant to A.R.S.
10 §20-462, or at such other rate as is appropriate to compensate her for losses she incurred
11 as a result of Defendants' nonpayment of benefits.

12 WHEREFORE, Plaintiff prays for judgment as follows:

13 A. For an Order finding that Plaintiff is disabled and meets the definition of
14 disability for the "Own Occupation" as defined in the relevant Plan and Policy and that
15 she is entitled to all of those benefits due, and that she is also entitled to any other non-
16 disability employee benefits that may be due as a result of being found disabled from the
17 date she was first denied all of these benefits through the date of judgment, with
18 prejudgment interest payable thereon;

19 B. Assuming the issue is ripe before the Court at the time of adjudication (i.e. the
20 "Own Occupation" timeframe in the Plan and Policy has expired and Plaintiff's claim has
21 entered into the "Any Occupation" timeframe), for an Order that Plaintiff also meets the
22 "Any Occupation" definition of disability set forth in the relevant Plan and Policy and that
23 she is entitled to all of those benefits due as well as any other non-disability employee
24 benefits she may be entitled to as a result of meeting this definition of disability, from the

25
26

date she was first entitled to these benefits through the date of judgment with prejudgment interest payable thereon;

  C. For an Order directing Defendants to continue paying Plaintiff the all aforementioned benefits set forth in Plaintiff's Prayer for Relief until such time as she meets the conditions for the termination of these benefits;

  D. For attorney's fees and costs incurred as a result of prosecuting this suit pursuant to 29 U.S.C. §1132(g); and

  E. For such other and further relief as the Court deems just and proper.

DATED this 23rd day of December, 2015.

SCOTT E. DAVIS. P.C.

By: */s/ Scott E. Davis*
   Scott E. Davis
   Attorney for Plaintiff

-11-